Whitaker, Judge,
delivered the opinión of the court:-
This is a suit to recover increased costs alleged to have been incurred as the result of the enactment of the National Industrial Recovery Act. It is brought under the Act of June 25,1938 (52 Stat. 1197), allowing recovery of increased costs resulting from the enactment of the National Industrial Recovery Act.
The B-W Construction Company had a contract for the remodelling of the Post Office Department building in Washington, D. C. It sublet to plaintiff the installation of all new mail handling equipment and the reconditioning of the old. This was done on May 5, 1932, and the plaintiff started work on August 10, 1933, the same day it signed the President’s Reemployment Agreement (hereinafter called P. R. A.).
In its petition plaintiff alleged that its plant was operated on a fifty-hour a week basis and that in bidding on jobs, including this one, it included its overhead cost on this basis. As a result of the limitation of the workweek to 35 hours by the P. R. A., and to 40 hours by the subsequent Code under the National Industrial Recovery Act (hereinafter called the N. R. A.), plaintiff says the length of time required to complete the job was increased by thirty percent and consequently its overhead costs were increased by this percentage. For this amount it sues.
Plaintiff’s testimony in chief was taken prior to the adoption of our order requiring claimants under the Act of June 25, 1938 to furnish the defendant statements showing in detail their alleged increased costs and to give defendant’s accountants access to their books so that the statements might be checked. In that testimony plaintiff’s only witness, its assistant treasurer, one Karl A. Krause, swore that prior to August 10,1933, the date of the P. R. A., plaintiff’s plant was working 50 hours a week. If they could have operated 50 hours a week during the contract period, plaintiff says, they would have worked a total of 271,795 hours, which is based on all their employees working exactly 50 hours a week, whereas they in fact worked but 163,445 hours. All of Krause’s testimony and calculations are on the basis of a *477 50-hour week prior to the P. R. A., and this is the basis of the petition.
Afterwards plaintiff furnished the statements required by our order, and the defendant’s accountant checked its books. Krause’s statement that they had been working 50 hours a week prior to the P. R. A. proved to be untrue. Instead of having worked 50 hours a week the plant for the six-month period prior to N. R. A. had worked on the average but 32% hours a week, with a maximum of 45 hours and a minimum of 21.7 hours. The foundation for all of plaintiff’s calculations was therefore swept away.
Then plaintiff shifted its ground. Krause was recalled and testified plaintiff’s bid for the Post Office Department’s work was based on running 50 hours a week. He did not support this statement with his work sheets or otherwise. A reading of his entire testimony and the exhibits convinces us that plaintiff would not have operated its plant on .a 50-hour week, N. R. A. or not, unless they could have gotten sufficient work to justify it, and that it knew this when it put in its bid. Prior to the N. R. A. they worked but 32% hours a week, and Krause says this was on account of lack of work. About the same time plaintiff bid on this job it also bid on a job in Chicago amounting to over $3,000,000, but it did not get it. In- consequence plaintiff did not have enough work to run fifty hours a week and did not do so.
The evidence shows plaintiff paid but little attention to the 35-hour limitation when the work at hand demanded longer hours. Defendant’s exhibit BB, quoted in finding 7, shows that in the first pay period after the jrob began there were 46 men out of a total of 135 who worked from 80 to 95 hours a week, whereas, the P. R. A. limit for the period was 77 hours. In the next period there were 31 men working longer hours than the limit of 84 hours, 25 of whom worked 96 hours and more. This was out of a total number of employees averaging 139. In the next period there were only four who worked overtime, and in the next only one, but in the following six periods there were 41, 48, 48, 41, 56 and 61, respectively. In the next period there were only 9, *478 but in the following six there were 55, 35, 19, 63, 59, and 20, respectively. In the last three periods there were 8, 0, and 16, respectively. Had plaintiff’s work on hand justified it, apparently it would have worked the 50 hours a week, notwithstanding the agreement and the Code.
On the other hand, many of plaintiff’s men did not work •as long as> the P. K. A. permitted. In the first period 55 men ’ worked less than the limit, 32 of them working 50 hours or 'less, whereas, 'they might have worked 17. In the next period there were 87. In the several pay periods throughout the contract the men working less than the limit were as follows: 88, 83, 64, 71, 54, 42, 31, 87, 125, 55, 76, 62, 46, 49, 48, 109, 124, and 94. This was out of a total averaging 139. In all the periods about 51 percent of plaintiff’s men worked less than the limit, and about 22 per cent worked more. Only 27 per cent worked the limit, no more and no less. In the contract period plaintiff worked a total Of 163,445 hours, whereas, it might have worked 190,890.
Krause offers as an explanation of this that when the work week was “reduced” to 35 hours' the shop became “unsynchronized.” He repeats this word a number of times, but what he means by it he nowhere explains. It is no explanation at all. In what he calls a “normal” workweek of 50 hours, he says all the employees-worked 50 hours. If this be true, then plaintiff’s operations are not of a character where one department normally works a less number of hours than another. Under the 35-hour week, therefore, all of plaintiff’s employees could have worked at least the minimum. Fifty-one percent of them worked less than the minimum. Whether or not the National Industrial Ke-covery Act had been passed, plaintiff’s plant would not have operated on a 50-hour week.
The allegations of plaintiff’s petition are wholly unsupported'by the evidence, and the new ground taken during the taking of testimony is likewise without foundation.
Plaintiff’s petition will be dismissed. It is so ordered.
MaddeN, Judge; Littleton, Judge; and Whaley, GMef Justice, concur.
Jones, Judge, took no part in the decision of this case.